# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF MINNESOTA

_____

In re:

Kristen Nicole Frame,                                    Bky. Case No. 09-41010

                                                         Chapter 13 Case

                     Debtor(s).

---

## MOTION OF DEBTOR(S) KRISTEN FRAME FOR AN ORDER
## (i) VALUING PROPERTY OF THE ESTATE AND A LIEN ON SUCH PROPERTY,
## (ii) RECLASSIFYING CLAIM, AND (iii) AVOIDING AN UNSECURED LIEN,
## AND OBJECTION TO CLAIM
---

TO: MERS care of Paul A. Weingarden, Chapter 13 Trustee, United States Trustee and all parties in interest as specified in Local Rule 9013-3.

Chapter 13 Debtor(s) Kristen Frame (the "Debtor") by this motion seeks the entry of an order (i) determining the value of her home in Oak Grove, Minnesota, and the lien of the second-priority mortgage thereon pursuant to § 506(a) of title 11 United States Code (the "Bankruptcy Code") and Rule 3012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (ii) reclassifying the claim arising from said entirely unsecured mortgage as a non-priority unsecured claim pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3007, and (iii) providing for the avoidance of such lien pursuant to Bankruptcy Code § 506(d) in accordance with their confirmed chapter 13 plan.

1.      The Court will hold a hearing on this Application at 2:30 p.m. on July 1, 2009, in Courtroom No: 7 West, at the United States Courthouse, at 300 S 4th Street, in Minneapolis, Minnesota, 55401.

2.     Any response to this application must be filed and delivered to Applicant no later than June 26, 2009, which is three days before the date set for hearing (excluding Saturdays, Sundays, or holidays),  or filed and served by mail not later than June 22, 2009, which is seven days before the date set for the hearing (excluding Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THIS APPLICATION IS TIMELY FILED, THE COURT MAY GRANT THE APPLICATION WITHOUT A HEARING.

3.     This case was commenced by the filing of the Debtor's voluntary petition on February 24, 2009 (the "Petition Date").

4.     As reflected by an appraisal dated February 4, 2009, the fair market value of the Debtor's home located at 21500 Linnet Street NW, Oak Grove, Minnesota (the "Property") was $265,000 (Exhibit "A").

5.     The Debtor seeks the entry of an order, pursuant to Bankruptcy Code § 506(a) and Bankruptcy Rule 3012, determining the Petition Date value of the Property to be $265,000.

6.     The Property is subject to two (2) mortgages. *See* title report annexed as Exhibit "B."

7.      The first-priority mortgage, dated January 19, 2007, was executed by the Debtor to First Franklin Financial Corp. in the original principal amount of $270,000 and is serviced by Home Loan Services, Inc. See Claim 2 filed in this case by Mortgage Electronic Registration Systems ("MERS"), a copy of which is annexed as Exhibit "C".

8.     On behalf of the owner and holder of the first mortgage, MERS's Claim 2 asserts a petition date secured claim of $291,356.62.

9.     The second-priority mortgage, also dated January 19, 2007, in favor of First Franklin Financial Corp., in the original principal amount of $69,000.00, is serviced by Home

Loan Services, Inc. See Claim 4 filed in this chapter 13 case, a copy of which is annexed as Exhibit "D".

10.      On behalf of the owner and holder of the second mortgage, MERS's Claim 4 asserts a petition date junior secured claim of $77,357.41.

11.      The Petition Date claim secured by the first-priority mortgage exceeds the Petition Date value of the Property by $21,356.62.

12.      There is no value in the Property to which the lien of the second-priority mortgage may attach.

13.      The Debtor seeks the entry of an order, pursuant to Bankruptcy Code § 502 and Bankruptcy Rule 3007, reclassifying Claim 4 as a non-priority unsecured claim.

14.      As a result of the above valuation and reclassification, the lien of the second-priority mortgage as reflected by Claim 4 filed by MERS may be avoided under Bankruptcy Code § 506(d).

15.      Bankruptcy Code §1322(b)(2)'s anti-modification provision does not prevent this result.

16.      The Debtor will file a modified chapter 13 providing for (i) avoidance of the lien upon successful completion of their modified plan, and (ii) the submission of a satisfaction of mortgage in escrow with the trustee, to be released to the undersigned for filing in the Anoka County real estate records upon such successful plan completion.

15.      The Debtor does not contest the validity, priority or extent of such lien.

16.      No prior request has been made to this or any other Court for the relief sought in this motion.

17.      The Debtor has submitted a Memorandum of Law in support of their motion.

WHEREFORE, chapter 13 Debtor Kristen Frame seek the entry of an order (i) determining the value of the Property; (ii) reclassifying Claim 4 as a non-priority unsecured claim; (iii) providing for the avoidance of the lien of the wholly unsecured second-priority mortgage on the Property evidenced by Claim 4 upon successful completion of the Debtors' modified chapter 13 plan, and (iv) for such other and further relief as is just and proper.

Dated: June 1, 2009

/e/ Timothy C. Theisen
Timothy C. Theisen
Attorney for Debtor(s)
229 Jackson Street, Suite 105
Anoka, MN 55303
(763) 421-0965

Debtor, Kristen Frame have reviewed the facts contained in this motion, and hereby state under penalty of perjury that these facts are true and accurate to the best of our knowledge.

Dated: June 1, 2009

/e/Kristen Frame
Kristen Frame

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF MINNESOTA

_____

In re:

Kristen Nicole Frame,                              Bky. Case No. 09-41010

                                                   Chapter 13 Case

                          Debtor(s).

_____

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEBTOR KRISTEN FRAME FOR AN ORDER (i) VALUING PROPERTY OF THE ESTATE AND A LIEN ON SUCH PROPERTY, (ii) RECLASSIFYING CLAIM, AND (iii) AVOIDING AN UNSECURED LIEN
_____

TO: MERS care of Paul A. Weingarden, Chapter 13 Trustee, United States Trustee and all parties in interest as specified in Local Rule 9013-3.

Chapter 13 Debtor Kristen Frame (the "Debtor") has this date filed her motion seeking the entry of an order (i) determining the value of her home in Oak Grove, Minnesota, and the lien of the second-priority mortgage thereon pursuant to § 506(a) of title 11 United States Code (the "Bankruptcy Code") and Rule 3012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (ii) reclassifying the claim arising from said entirely unsecured mortgage as a non-priority unsecured claim pursuant to 11 US.C. § 502 and Bankruptcy Rule 3007, and (iii) providing for the avoidance of such lien pursuant to Bankruptcy Code § 506(d) in connection with her modified chapter 13 plan.

In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), Justice Clarence Thomas observed that § 1322(b)(2) focuses on the rights of a holder of a secured claim secured by a security interest in the debtor's primary residence and not the claim itself. These rights, he reasoned, may not be modified, and the rights contained in the note and mortgage include 'the right to repayment of the principal in monthly installments over a fixed term ... the right to retain a lien until the debt is paid off... and the right to bring an action to recover any deficiency remaining after foreclosure...'

*Nobelman,* 508 U.S. at 329, 113 S.Ct. 2106.

However, Justice Thomas also pointed out that '[p]etitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.' *Nobelman,* 508 U.S. at 328, 113 S.Ct. 2106. The Court in *Nobelman* proceeded to observe that the bank still held a partially secured claim, and, therefore, since it held a secured claim as defined by § 506, was entitled to the antimodification protection of § 1322(b)(2)."
*In re Black*, 260 B.R. 134, 139 (Bkrtcy.E.D.Ark., 2001).

A lien in property is not secured (and the claim to which such lien pertains is not a "secured claim") if there exists "insufficient equity in the property to cover any portion of that lien." *In re Pond*, 252 F.3d 122, 127 (2d Cir. 2001).

The holder of a wholly unsecured lien, as determined under Bankruptcy Code § 506(a), is not the holder of "'a claim secured only by a security interest in . . . the [debtors'] principal residence' and, therefore, [its] rights in the lien are not protected under the antimodification provision of 11 U.S.C. § 1322(b)(2)." *In re Pond*, *id*.

The Debtors may move to 'strip-off' a wholly-unsecured lien by a valuation motion brought pursuant to Bankruptcy Rule 3012 and Bankruptcy Code § 506. Such motion should explicitly state that the motion does not contest the validity, extent or priority of the lien. *In re Robert*, 313 B.R. 545 (Bankr. N.D.N.Y. 2004).

The majority of courts hold that the appropriate procedure for lien avoidance under Section 506 is by motion because lien avoidance is the inevitable byproduct of valuing a claim, which is accomplished by motion pursuant to Bankruptcy Rule 3012. No further proceeding is required. *In re Hoskins,* 262 B.R. 693 (Bankr.E.D.Mich.2001); *In re Fuller, Jr.,* 255 B.R. 300 (Bankr.W.D.Mich.2000);*In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich.1993); *Lee Servicing Co. v. Wolf (In re Wolf),* 162 B.R. 98 (Bankr.D.N.J.1993). "Once the value of the secured claim is determined, the attendant lien is stripped off automatically under Section 506(d)."

*In re Sadala*, 294 B.R. 180, 183 (Bkrtcy.M.D.Fla. 2003).

In *In re Mansaray-Ruffin*, 2008 WL 2498048 (3d. Cir. June 24, 2008), the court distinguished challenging the validity of a lien from the valuation of the collateral to which a lien attaches to determine the amount of a secured claim, the former requiring an adversary proceeding. *Mansaray-Ruffin* cites *In re Enewally*, 368 F.3d 1165, 1173 (9th Cir.) *cert. denied* 543 U.S. 1021, 125 S.Ct. 669, 160 L.Ed. 497 (2004) which "…confirmed that Rule 7001 does not require a debtor to file an adversary complaint where the debtor seeks to modify the lien amount based on the value of the collateral." *Mansary-Ruffin* at 9-10.

In *In re Kemp*, 391 B.R. 262 (Bankr.D.N.J. 2008), the court further extrapolated from *Mansaray-Ruffin* in regard to motions versus adversaries when lien stripping. The court held that the debtor was seeking valuation of the lien at issue, and was not contesting the validity, priority or extent of the lien. In so doing the court relied on F.R.B.P. 3012 which states "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest." *Kemp* at 265. The Kemp court also cited 10 Lawrence P. King, *Collier on Bankruptcy,* ¶ 7001.03[1] at 7001-10 (15th Ed. Rev.2008):

> Under section 506(a) of the Code, secured claims are to be valued and allowed as secured to the extent of the value of the collateral and unsecured for the excess over such value. Rule 3012 implements section 506(a) and provides that the court may determine the value of a claim secured by a lien on property in which the estate has an interest on *motion* of any party in interest. One could argue that such a proceeding is one to determine the "extent" of the lien. The Advisory Committee Note to Rule 3012 refutes this notion by making the distinction that a Rule 7001 adversary proceeding "is relevant to the basis of the lien itself" as distinguished from valuation for the purposes given in examples in that Note, such as to determine the issue of adequate protection under section 361, impairment under section 1124 or treatment of the claim in a plan pursuant to section 1129(b). Thus, under the Bankruptcy Rules, valuation is accomplished by motion under Rule 9014, rather than in an adversary proceeding under Rule 7001." Kemp at 265-266.

In *In re Calendar* 262 BR 777 (8th Cir.BAP (Mo.), 2001) (Opinion written by Judge Kressel with Judge O'Brien concurring on the panel) the Court stated:

> In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court held that § 1322(b)(2)'s antimodification provision protect a creditor who is 'secured' by the homestead even if it is not the holder of a secured claim within the meaning of 11 U.S.C. § 506(a). Since that decision, a number of courts have held that *Nobelman* only applies when the creditor holds some secured claim. According to these courts, a plan may modify the rights of a creditor who is secured as a matter of state law but who is not the holder of a § 506(a) secured claim. *See, e.g. McDonald v. Master Financial (In re McDonald),* 205 F.3d 606 (3rd Cir.2000); *Tanner v. FirstPlus Financial (In re Tanner),* 217 F.3d 1357 (11th Cir.2000); *Bartee v. Tara Colony Homeowners Ass'n (Matter of Bartee),* 212 F.3d 277 (5th Cir.2000); *contra In re Cater,* 240 B.R. 420 (M.D.Ala.1999); *In re Mattson,* 210 B.R. 157 (Bankr.D.Minn.1997).
>
> However, cramdown and lien stripping are confirmation issues which were presumably explicitly or implicitly resolved when the bankruptcy court confirmed the debtor's plan. In other words, what a creditor's secured claim is and how much has to be paid to the creditor are two different issues. In fact, it is the very point of § 1322(b)(2) that eligible creditors are paid in full regardless of what their secured claims are."

*Calendar* at 779-780. *Mattson*, a 1997 court-level opinion of Judge Kressel, appears to be of limited precedential value, as Judge Kressel said in *Calendar* that *Mattson* was contra to the emerging trend in favor of lien stripping. In *Calendar*, the first mortgage claim was $92,000, the house was worth $95,000, there was a disputed mechanics lien with unstated amount, but presumably in excess of the remaining $3000 in equity, which, if valid, would have had priority over the next secured creditor in line, American General Finance. The Court stated "If, as argued by the debtor, that claim has priority over the claim of American General, then there would be no value left to secure American General Finance's claim. It would then have no secured claim." While *Calendar* did not rule on lien stripping as the BAP remanded for the court on grounds of considering the res judicata implications of an already-confirmed plan, it is submitted that *Calendar* provides acceptance in this Circuit for lien stripping.

WHEREFORE, chapter 13 Debtor Kristen Frame seek the entry of an order (i) determining the value of the Property and the second-priority mortgage lien thereon; (ii) providing for the avoidance of the lien of the wholly unsecured second-priority mortgage on the Property upon successful completion of the Debtor's modified chapter 13 plan, (iii) reclassifying the claim arising from said mortgage as a non-priority unsecured claim, and (iv) for such other and further relief as is just and proper.

Dated: June 1, 2009

/e/ Tim Theisen
Timothy C. Theisen
Attorney for Debtor(s)
229 Jackson Street, Suite 105
Anoka, MN 55303
(763) 421-0965

IN RE:                                                    Case No. 09-41010

Frame, Kristen Nicole                                     Chapter 13
                        Debtor(s)

## SIGNATURE DECLARATION

☐ PETITION, SCHEDULES & STATEMENTS

☐ CHAPTER 13 PLAN

☐ SCHEDULES & STATEMENTS ACCOMPANYING VERIFIED CONVERSION

☐ AMENDMENT TO PETITION, SCHEDULES & STATEMENTS

☑ MODIFIED CHAPTER 13 PLAN

☑ OTHER (Please describe) Lien Strip Motion

I [We], the undersigned debtor(s) or authorized representative of the debtor, *make the following declarations under penalty of perjury:*

· The information I have given my attorney and provided in the electronically filed petition, statements, schedules, amendments, and/or chapter 13 plan, as indicated above, is true and correct;

· The information provided in the "Debtor Information Pages" submitted as a part of the electronic commencement of the above-referenced case is true and correct;

· **[individual debtors only]** If no Social Security Number is included in the "Debtor Information Pages" submitted as a part of the electronic commencement of the above-referenced case, it is because I do not have a Social Security Number;

· I consent to my attorney electronically filing with United States Bankruptcy Court my petition, statements and schedules, amendments, and/or chapter 13 plan, as indicated above, together with a scanned image of this Signature Declaration and the completed "Debtor Information Pages," if applicable; and

· **[corporate and partnership debtors only]** I have been authorized to file this petition on behalf of the debtor.

Date: June 1, 2009

X _____          X _____
Signature of Debtor or Authorized Representative       Signature of Joint Debtor

Kristen Nicole Frame
Printed Name of Debtor or Authorized Representative    Printed Name of Joint Debtor

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

APPRAISAL OF



Single Family Residential

LOCATED AT:

21500 Linnet Street NW
Oak Grove, MN  55011

FOR:

Kristen Frame
21500 Linnet Street NW
Oak Grove, MN 55011

BORROWER:

Kristen Frame

AS OF:

February 4, 2009

BY:

John J. Hadtrath
Certified Residential Real Property Appraiser

2/4/2009

Kristen Frame
21500 Linnet Street NW
Oak Grove, MN 55011

File Number:  9-26

In accordance with your request, I have appraised the real property at:

21500 Linnet Street NW
Oak Grove, MN  55011

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   February 4, 2009                            is:

$265,000
Two Hundred Sixty-Five Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

John J. Hadtrath
Certified Residential Real Property Appraiser

jh

EXHIBIT A-2

# Uniform Residential Appraisal Report

Frame
File No. 9-26

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | |
|---|---|
| Property Address 21500 Linnet Street NW | City Oak Grove — State MN — Zip Code 55011 |
| Borrower Kristen Frame | Owner of Public Record Kristen Frame — County Anoka |

Legal Description Nightingale Knoll Lot Block 3

Assessor's Parcel # 103324430012 — Tax Year 2008 — R.E. Taxes $ 1,743.99

Neighborhood Name Nightingale Knoll — Map Reference B2 - 22 — Census Tract 27003-0501.15-1

Occupant [X] Owner [ ] Tenant [ ] Vacant — Special Assessments $ 72.13 — [ ] PUD — HOA $ N/A [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Personal (Lawyer)

Lender/Client Kristen Frame — Address 21500 Linnet Street NW, Oak Grove, MN 55011

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). Northstar MLS, County Records, & Owner.

## CONTRACT

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ 0 — Date of Contract Personal — Is the property seller the owner of public record? [ ] Yes [ ] No — Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid. $

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | | Property Values [ ] Increasing [ ] Stable [X] Declining | | | PRICE | AGE | One-Unit | 45 % |
| Built-Up [ ] Over 75% [X] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | $(000) | (yrs) | 2-4 Unit | 5 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 100- Low | New | Multi-Family | 5 % |
| Neighborhood Boundaries The City of Oak Grove city limits. | | | | | | 400+ High | 50+ | Commercial | 5 % |
| | | | | | | 250 Pred. | 8 | Other Vacant | 40 % |

Neighborhood Description Linnet Street NW is a quiet residential street. Highway 65 a major traffic artery is located within 5 miles of the subject and offers access to shopping centers, malls, parks, lakes, and other major traffic arteries. The Refuge Golf Club is located about one mile from the subject. Lake George is located within blocks of the subject.

Market Conditions (including support for the above conclusions) Interest rates are favorable and financing options are readily available. The subject is located in a neighborhood that is considered to be declining.

## SITE

Dimensions 323 x 300 — Area 96900 Sq.Ft. — Shape Rectangular — View Residential

Specific Zoning Classification Residential — Zoning Description Single Family Residential

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | 150 Amp CB | Water | [ ] | [X] Well | Street Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | [ ] | [X] Septic | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No — FEMA Flood Zone C — FEMA Map # 2700050025A — FEMA Map Date 01/16/1980

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe. There were no physical, functional, or external obsolescence noted.

## IMPROVEMENTS

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition | |
|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [ ] Concrete Slab [ ] Crawl Space | | Foundation Walls Conc.Block-Avg. | Floors | Cpt/Hw/Ct-A/Gd |
| # of Stories Two | | [X] Full Basement [ ] Partial Basement | | Exterior Walls Brick/Vinyl-Avg. | Walls | Drywall-Avg. |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 1332 sq. ft. | | Roof Surface Asph. Sh.-Avg. | Trim/Finish | Wood-Average |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 83 % | | Gutters & Downspouts None | Bath Floor | Ceramic-Avg/Gd |
| Design (Style) Two Story | | [ ] Outside Entry/Exit [X] Sump Pump | | Window Type Glide-Average | Bath Wainscot | Fiberglass-Avg. |
| Year Built 2002 | | Evidence of [ ] Infestation | | Storm Sash/Insulated Yes-Average | Car Storage | [ ] None |
| Effective Age (Yrs) 5 | | [ ] Dampness [ ] Settlement | | Screens Yes-Average | [X] Driveway # of Cars 3 | |
| Attic [ ] None | | Heating [X] FWA [ ] HWBB [ ] Radiant | | Amenities | Driveway Surface Asphalt | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other — Fuel Gas | | [X] Fireplace(s) # 1 [ ] Fence | [X] Garage # of Cars 3 | |
| [ ] Floor [ ] Scuttle | | Cooling [X] Central Air Conditioning | | [ ] Patio/Deck [X] Porch Opn.Frnt | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [ ] Pool [ ] Other | [X] Att. [ ] Det. [ ] Built-in | |
| Appliances [X] Refrigerator [X] Range/Oven | [X] Dishwasher [ ] Disposal [X] Microwave [X] Washer/Dryer [ ] Other | | | | | |

Finished area above grade contains: 6 Rooms — 3 Bedrooms — 2.5 Bath(s) — 1,776 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) Open front porch, central air, 1 fireplace, vaulted ceilings, sprinkler system, ceiling fans, garage door opener, garage is sheetrocked.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.) No required repairs were noted. The subject has been well maintained. Since purchasing, recent improvements include basic upkeep.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe.

Freddie Mac Form 70 March 2005 — Page 1 of 6 — Produced using ACI software, 800.234.8727 www.aciweb.com — Fannie Mae Form 1004 March 2005
1004_05 062906

EXHIBIT A-3

Hadtrath Appraisals, Inc.

# Uniform Residential Appraisal Report

Frame

File No. 9-26

There are 21 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 182,999 to $ 699,000 .

There are 24 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 145,000 to $ 400,000 .

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 21500 Linnet Street NW<br>Oak Grove | 3100 201st Lane NW<br>Oak Grove | | 19965 Quapaw Street NW<br>Oak Grove | | 81 204th Lane NW<br>Oak Grove | |
| Proximity to Subject | | 2.14 MILES SW | | 3.56 MILES WSW | | 2.42 MILES ESE | |
| Sale Price | $ 0 | $ 300,000 | | $ 264,150 | | $ 299,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 130.43 sq. ft. | | $ 123.49 sq. ft. | | $ 128.44 sq. ft. | |
| Data Source(s) | | MLS# 3530873 DOM 140 | | MLS# 3608448 DOM 60 | | MLS# 3613498 DOM 52 | |
| Verification Source(s) | | County Records | | County Records | | County Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Other | | Conventional | | Conventional | |
| Concessions | | None | | Points | -8,500 | None | |
| Date of Sale/Time | Personal | 09/26/2008 | -11,700 | 12/29/2008 | -2,600 | 12/31/2008 | -2,900 |
| Location | Rural | Rural | | Rural | | Rural | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2.2 Acres | 2 Acres | | 1.92 Acres | | 2.09 Acres | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Two Story | Two Story | | Two Story | | Two Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 7 Years | 5 Years | -4,000 | 13 Years | +12,000 | 2 Years (New) | -14,000 |
| Condition | Average/Good | Average/Good | | Average/Good | | Good | -20,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6  3  2.5 | 6  3  2.5 | | 7  3  2.5 | | 7  4  2.5 | |
| Gross Living Area | 30.00  1,776 sq. ft. | 2,300 sq. ft. | -15,700 | 2,139 sq. ft. | 10,900 | 2,328 sq. ft. | -16,600 |
| Basement & Finished | Full | Partial | +5,000 | Full Walk Out | -2,000 | Full | |
| Rooms Below Grade | 1100 Sq.Ft. | 900 Sq.Ft. | +3,000 | 1090 Sq.Ft. | | Unfinished | +16,500 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA C/Air | FWA C/Air | | FWA C/Air | | FWA C/Air | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 3 Car Garage | 3 Car Garage | | 4 Car Garage | -5,000 | 3 Car Garage | |
| Porch/Patio/Deck | Open Porch | Deck,Scn.Porch | -7,000 | Dck,Ptio.O.Prch | -5,000 | Open Porch | |
| | 1 Fireplace | 2 Fireplaces | -2,000 | 1 Fireplace | | 1 Fireplace | |
| | Owner Occupied | Bank Owned | +10,000 | Owner Occupied | | Bank Owned | +10,000 |
| Net Adjustment (Total) | | ☐+ ☒- $  22,400 | | ☐+ ☒- $  200 | | ☐+ ☒- $  27,000 | |
| Adjusted Sale Price | | Net Adj. -7.5% | | Net Adj. -0.1% | | Net Adj. -9.0% | |
| of Comparables | | Gross Adj. 19.5% $ 277,600 | | Gross Adj. 17.4% $ 263,950 | | Gross Adj. 26.8% $ 272,000 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain _____

_____

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data source(s) Northstar MLS and County Records and Owner

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data source(s) Northstar MLS and County Records

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 1/19/2007 | None in the past 3 years. | 09/30/2008 | 05/25/2006 |
| Price of Prior Sale/Transfer | $345,000 | | $145,000 | $134,900 |
| Data Source(s) | MLS,County, & Owners | Northstar MLS,Cty.Rec. | Northstar MLS,Cty.Rec. | Northstar MLS,Cty.Rec. |
| Effective Date of Data Source(s) | 2/4/2009 | 2/4/2009 | 2/4/2009 | 2/4/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales   See Attached Addendum

Summary of Sales Comparison Approach.   See Attached Addendum

Indicated Value by Sales Comparison Approach $ 265,000

Indicated Value by: Sales Comparison Approach $ 265,000   Cost Approach (if developed) $ 275,900   Income Approach (if developed) $ Not Required

The market approach is the most germane and appropriate method of valuation and is given the greatest consideration.  Income approach was not utilized due to limited data.  Estimated value assumes a subject marketing time of +/- 3 months.

This appraisal is made ☒ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: _____

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 265,000

as of 2/4/2009 , which is the date of inspection and the effective date of this appraisal.

# Uniform Residential Appraisal Report

Frame
File No. 9-26

The listings and solds indicated at the top of the previous page were data pulled from the MLS.  These are two story homes located in Oak Grove on zero to five acres and were built from the year 1995 to 2007.  These would be the most similar homes to the subject property.  There were 24 solds in the past 12 months and out of the 24 sold there were only 3 arm length transaction sales.  The other 21 sales in the subject's market were either bank owned, corporate owned, or REO's.  This indicates that these types of properties are driving this market.  These type of stressed sales tend to sell under typical arm length transaction sales.

**ADDITIONAL COMMENTS**

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The site value was derived from the tax assessed value minus the declining market adjustment.

| | | |
|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE ..................................... = $ | 74,000 |
| Source of cost data Marshall Swift,Builders, & Previous Files. | Dwelling   1,776 Sq. Ft. @ $   90.00 ........... = $ | 159,840 |
| Quality rating from cost service Average   Effective date of cost data 2/4/2009 | Bsmt: 1100 Sq.Ft.   35.00 ....... = $ | 38,500 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Open Porch,Central Air,1 Fireplace | 8,000 |
| Cost estimates were derived from construction contracts, building | Garage/Carport 650   Sq. Ft. @ $   30.00 ....... = $ | 19,500 |
| contractors, office files, and the Marshall Swift Cost Service.  The | Total Estimate of Cost-New .............. = $ | 225,840 |
| site value as vacant is based on market trends.  Physical | Less   Physical   Functional   External | |
| Depreciation reflects physical wear and is based on age/life | Depreciation $28,900 = $ ( | 28,900) |
| method with a total remaining economic life of 95 years. | Depreciated Cost of Improvements ............................... = $ | 196,940 |
| | "As-is" Value of Site Improvements ............................... = $ | 5,000 |
| Estimated Remaining Economic Life (HUD and VA only)   95 Years | INDICATED VALUE BY COST APPROACH ........................... = $ | 275,900 |

**COST APPROACH**

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier   N/A = $   0 Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

**INCOME**

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes ☐ No   Unit type(s)  ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|

Total number of units rented                Total number of units for sale                Data source(s)

Was the project created by the conversion of an existing building(s) into a PUD?  ☐ Yes ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete?  ☐ Yes ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

**PUD INFORMATION**

Freddie Mac Form 70 March 2005
Page 3 of 6
Produced using ACI software, 800.234.8727 www.aciweb.com
Fannie Mae Form 1004 March 2005
1004_05 042906

EXHIBIT A-5

# Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD).  This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications.  Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted.  The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.  Modifications or deletions to the certifications are also not permitted.  However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications.  The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:**  The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal.  The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements.  The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area.  Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal.  Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied.  The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

EXHIBIT A-6

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value.  I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment.  I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.  I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.  I have knowledge and experience in appraising this type of property in this market area.

12.  I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.  I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.  I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value.  I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal.  I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.  I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.  I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.  I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.  I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.  My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.  I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report.  If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report.  I certify that any individual so named is qualified to perform the tasks.  I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.  I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

EXHIBIT A-7

# Uniform Residential Appraisal Report

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.  Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations.  Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature _John J. Hadtrath_
Name John J. Hadtrath
Company Name Hadtrath Appraisals, Inc.
Company Address 11774 Kerry Street NW
Coon Rapids, MN 55433
Telephone Number 612-701-6074
Email Address jjhadtrath@comcast.net
Date of Signature and Report 2/4/2009
Effective Date of Appraisal 2/4/2009
State Certification # 4003345
or State License # _____
or Other (describe) _____ State # _____
State MN
Expiration Date of Certification or License 08/31/2009
Certified Residential Real Property Appraiser
ADDRESS OF PROPERTY APPRAISED
21500 Linnet Street NW
Oak Grove, MN  55011

APPRAISED VALUE OF SUBJECT PROPERTY $ 265,000

LENDER/CLIENT
Name _____
Company Name Kristen Frame
Company Address 21500 Linnet Street NW
Oak Grove, MN 55011
Email Address _____

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature _____
Name _____
Company Name _____
Company Address _____
_____
Telephone Number _____
Email Address _____
Date of Signature _____
State Certification # _____
or State License # _____
State _____
Expiration Date of Certification or License _____

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection _____
☐ Did inspect interior and exterior of subject property
   Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection _____

Freddie Mac Form 70 March 2005     Produced using ACI software, 800.234.8727 www.aciweb.com     Fannie Mae Form 1004 March 2005
Page 6 of 6
1004_05 062906

Hadtrath Appraisal
EXHIBIT A-8

# Uniform Residential Appraisal Report

Frame
File No. 9-26

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 21500 Linnet Street NW | 21341 Killdeer Street NW | | 21640 Killdeer Street NW | | 4110 210th Lane NW | |
| | Oak Grove | Oak Grove | | Oak Grove | | Oak Grove | |
| Proximity to Subject | | 0.19 MILES SSE | | 0.21 MILES NE | | 2.72 MILES W | |
| Sale Price | $ 0 | $ 229,900 | | $ 234,000 | | $ 295,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 129.89 sq. ft. | | $ 99.32 sq. ft. | | $ 125.96 sq. ft. | |
| Data Source(s) | | MLS# 3618985 DOM 92 | | MLS# 3630109 DOM 30 | | MLS# 3607262 DOM 129 | |
| Verification Source(s) | | County Records | | County Records | | County Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Active | | Pending | | Active | |
| Concessions | | Listing | -5,300 | Sale | -5,400 | Listing | -6,800 |
| Date of Sale/Time | Personal | Not Available | | PCD 02/05/2009 | | Not Available | |
| Location | Rural | Rural | | Rural | | Rural | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2.2 Acres | 2.05 Acres | | 2.44 Acres | | 2 Acres | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Two Story | Two Story | | Two Story | | Two Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 7 Years | 7 Years | | 8 Years | +2,000 | 9 Years | +4,000 |
| Condition | Average/Good | Average/Good | | Average/Good | | Average/Good | |
| Above Grade | Total 6 Bdrms. 3 Baths 2.5 | Total 8 Bdrms. 4 Baths 2 | +1,500 | Total 8 Bdrms. 4 Baths 3 | -1,500 | Total 7 Bdrms. 3 Baths 2.5 | |
| Room Count | | | | | | | |
| Gross Living Area 30.00 | 1,776 sq. ft. | 1,770 sq. ft. | | 2,356 sq. ft. | -17,400 | 2,342 sq. ft. | -17,000 |
| Basement & Finished | Full | Full | | Full Walk Out | -2,000 | Full | |
| Rooms Below Grade | 1100 Sq.Ft. | Unfinished | +16,500 | Unfinished | +16,500 | Unfinished | +16,500 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA C/Air | FWA C/Air | | FWA C/Air | | FWA C/Air | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 3 Car Garage | 3 Car Garage | | 2 Car Garage | +5,000 | 3 Car Garage | |
| Porch/Patio/Deck | Open Porch | Open Porch | | Lrg.Open Porch | -2,000 | Open Porch | |
| | 1 Fireplace | 1 Fplc.,Out Bldg. | -10,000 | 1 Fireplace | | None | +2,000 |
| | Owner Occupied | Corporate Ownd | +10,000 | Bank Owned | +10,000 | Owner Occupied | |
| Net Adjustment (Total) | | [X] + [ ] - $ 12,700 | | [X] + [ ] - $ 5,200 | | [ ] + [X] - $ 1,300 | |
| Adjusted Sale Price | | Net Adj. 5.5% | | Net Adj. 2.2% | | Net Adj. -0.4% | |
| of Comparables | | Gross Adj. 18.8% $ 242,600 | | Gross Adj. 26.4% $ 239,200 | | Gross Adj. 15.7% $ 293,700 | |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 1/19/2007 | 11/29/2004 | 05/08/2008 | None in the past 3 years. |
| Price of Prior Sale/Transfer | $345,000 | $304,900 | $375,000 | |
| Data Source(s) | MLS,County, & Owners | Northstar MLS,Cty.Rec. | Northstar MLS,Cty.Rec. | Northstar MLS,Cty.Rec. |
| Effective Date of Data Source(s) | 2/4/2009 | 2/4/2009 | 2/4/2009 | 2/4/2009 |

Summary of Sales Comparison Approach

*SALES COMPARISON APPROACH*

1004_05 062906

EXHIBIT A-9

Hadtrath Appraisals, Inc.

# Uniform Residential Appraisal Report

Frame
File No. 9-26

| FEATURE | SUBJECT | COMPARABLE SALE NO. 7 | | COMPARABLE SALE NO. 8 | | COMPARABLE SALE NO. 9 | |
|---|---|---|---|---|---|---|---|
| Address | 21500 Linnet Street NW<br>Oak Grove | 4741 Verde Valley Road NW<br>Oak Grove | | 2131 Viking Boulevard NW<br>Oak Grove | | 3142 201st Lane NW<br>Oak Grove | |
| Proximity to Subject | | 3.15 MILES WSW | | 2.72 MILES S | | 2.17 MILES SW | |
| Sale Price | $ 0 | | $ 305,000 | | $ 274,000 | | $ 247,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 104.31 sq. ft. | | $ 135.98 sq. ft. | | $ 114.94 sq. ft. | |
| Data Source(s) | | MLS# 3584966 DOM 110 | | MLS# 3611624 DOM 23 | | MLS# 3565379 DOM 66 | |
| Verification Source(s) | | County Records | | County Records | | County Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Cash | | FHA | | Conventional | |
| Concessions | | None | | None | | Points | -2,500 |
| Date of Sale/Time | Personal | 12/31/2008 | -3,000 | 12/08/2008 | -2,700 | 09/23/2008 | -9,600 |
| Location | Rural | Rural | | Rural | | Rural | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2.2 Acres | 2.05 Acres | | 4.65 Acres | -20,000 | 2.48 Acres | |
| View | Residential | Residential | | Residential/Trffc | +5,000 | Residential | |
| Design (Style) | Two Story | Two Story | | Two Story | | Two Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 7 Years | 3 Years | -8,000 | 12 Years | +10,000 | 4 Years | -6,000 |
| Condition | Average/Good | Average/Good | | Average/Good | | Average/Good | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 6 | 3 | 2.5 | 8 | 4 | 2.5 | 7 | 4 | 3 | -1,500 | 8 | 4 | 2.5 | |
| Gross Living Area | 30.00 1,776 sq. ft. | 2,924 sq. ft. | -34,400 | 2,015 sq. ft. | -7,200 | 2,149 sq. ft. | -11,200 |
| Basement & Finished | Full | Full Walk Out | -2,000 | Partial | +5,000 | Full Walk Out | -2,000 |
| Rooms Below Grade | 1100 Sq.Ft. | 1270 Sq.Ft. | -2,600 | 500 Sq.Ft. | +9,000 | Unfinished | +16,500 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA C/Air | FWA C/Air | | FWA C/Air | | FWA C/Air | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 3 Car Garage | 4 Car Garage | -5,000 | 3 Car Garage | | 4 Car Garage | -5,000 |
| Porch/Patio/Deck | Open Porch | Open Porch | | Deck,Porch | -4,000 | Open Porch | |
| | 1 Fireplace | 2 Fireplaces | -2,000 | 1 Fireplace | | 1 Fplc.,Out Bldg. | -10,000 |
| | Owner Occupied | Bank Owned | +10,000 | Owner Occupied | | Bank Owned | +10,000 |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 47,000 | ☐ + ☒ - | $ 6,400 | ☐ + ☒ - | $ 19,800 |
| Adjusted Sale Price<br>of Comparables | | Net Adj. -15.4%<br>Gross Adj. 22.0% | $ 258,000 | Net Adj. -2.3%<br>Gross Adj. 23.5% | $ 267,600 | Net Adj. -8.0%<br>Gross Adj. 29.5% | $ 227,200 |

| ITEM | SUBJECT | COMPARABLE SALE NO. 7 | COMPARABLE SALE NO. 8 | COMPARABLE SALE NO. 9 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 1/19/2007 | 10/06/2006 | None in the past 3 years. | None in the past 3 years. |
| Price of Prior Sale/Transfer | $345,000 | $618,750 | | |
| Data Source(s) | MLS,County, & Owners | Northstar MLS,Cty.Rec. | Northstar MLS,Cty.Rec. | Northstar MLS,Cty.Rec. |
| Effective Date of Data Source(s) | 2/4/2009 | 2/4/2009 | 2/4/2009 | 2/4/2009 |

Summary of Sales Comparison Approach

SALES COMPARISON APPROACH

EXHIBIT A-10

## ADDENDUM

**Prior Sales Comments**

The subject was last purchased on 1/19/2007 for $345,000. There was no listing of the subject at this time, through the MLS. According to the current owner, she knew one of the three sellers. Prior to this purchase, the subject was purchased on 5/17/2006 for $190,000. There was an MLS listing for this purchase and states that the subject had frozen pipes that burst and cause some mold problems throughout the subject. The problems were resolved and the subject was then sold for the $345,000. Comparable two was sold on 9/30/2008, at this time it was indicated that this home had mold problems and was in need of repair. It was cleaned up and repaired and then sold on 12/29/2008 for $264,150. Comparable three was a lot only sale on 5/25/2006. Comparable five was last purchased on 5/8/2008 for $375,000, was not able to obtain any data on this transaction but judging from the current pending sales price, it is very possible that this sale on 5/8/2008 was not a typical arm length transaction. It may have been a fraudulent transaction. Data on a couple other comparables was indicated. They were not transactions in the past 12 months but they do indicate that the subject's market has declined over the past couple years.

**Comments on Sales Comparison**

All the comparables are similar homes situated within competing neighborhoods. All the comparables would appeal to like utility buyers. The adjustments are moderate. The individual value is close. The extracted worth is well supported. It was necessary to exceed the 1 mile radius guidelines to use the best comparables. Comparables two and nine have seller paid concessions and both were adjusted accordingly. Age adjustments reflect the normal wear and tear of a property and buyers preference for newer less lived in homes. Age adjustments were made at $2000 per year. Comparable three was adjusted for superior condition due to the fact it is new construction and has never been lived in. Comparable eight was adjusted for superior lot size and for inferior views due to the fact it is located on a semi well travelled county road. MLS data indicated that these homes in the subject market have declined at a rate of 17% over the pat 6 months, however Minneapolis Area Association of Realtors data indicated that the entire City of Oak Grove had declined in value at a rate of 11.7% over the past 12 months. The time adjustment for all the closed sale comparables were made to reflect the declining market. The rate indicated by the Minneapolis Area Association of Realtors was used for this adjustment. See data sheet from Minneapolis Area Association of Realtors, included in this report. Comparables four through six are current pending sales or active listings that would have the same functional utility as the subject property. MLS data over the past 6 months indicates that these style of homes are receiving 97.7% of the average list price. For this reason, these three comparables were adjusted accordingly. Six of the comparables used were either bank owned, corporate owned, or REO,s, these tend to sell under market value compared to a typical arm length transaction sale. For this reason, these six comparables were adjusted for inferior transaction type. Due to the fact there was not enough data using typical arm length transaction sales and the fact that these type of sales are driving this market, it was necessary to use these comparables in this appraisal. Comparables four and five are located within 2 blocks of the subject, they are similar lots sizes and would appeal to like utility buyers. Comparable four had changed to a pending sale in the time frame of completing this appraisal. All nine comparables used help in determining the subject's value. The adjustment guidelines were exceeded for comparables three, five, seven, and nine due to large age and condition adjustments, gross living area adjustments, basement finishing adjustments, and transaction type adjustments. These comparables are still considered to be the most similar comparables at this time. The subject is one of the smallest two story in gross living area located in Oak Grove. The only comparable that is close in gross living area is comparable four. All the other comparables are bigger homes. All other adjustments should be self explanatory.

EXHIBIT A-11

# DIMENSION LIST ADDENDUM

| | |
|---|---|
| Borrower: Kristen Frame | File No.: 9-26 |
| Property Address: 21500 Linnet Street NW | Case No.: Frame |
| City: Oak Grove | State: MN    Zip: 55011 |
| Lender: Kristen Frame | |

| | |
|---|---|
| GROSS BUILDING AREA (GBA) | 1,776 |
| GROSS LIVING AREA (GLA) | 1,776 |

| Area(s) | Area | % of GLA | % of GBA |
|---|---|---|---|
| Living | 1,776 | | 100.00 |
| Level 1 | 1,332 | 75.00 | 75.00 |
| Level 2 | 444 | 25.00 | 25.00 |
| Level 3 | 0 | 0.00 | 0.00 |
| Other | 0 | 0.00 | 0.00 |

| | GBA | | |
|---|---|---|---|
| Basement | ☐ | 0 | |
| Garage | ☐ | 650 | |

## Area Measurements

| Measurements | | | Factor | | Total |
|---|---|---|---|---|---|
| 12.00 | x | 4.00 | x | 1.00 | = | 48.00 |
| 26.00 | x | 16.00 | x | 1.00 | = | 416.00 |
| 20.00 | x | 11.00 | x | 1.00 | = | 220.00 |
| 27.00 | x | 24.00 | x | 1.00 | = | 648.00 |
| 22.00 | x | 20.00 | x | 1.00 | = | 440.00 |
| 21.00 | x | 10.00 | x | 1.00 | = | 210.00 |
| 27.00 | x | 8.00 | x | 1.00 | = | 216.00 |
| 13.00 | x | 6.00 | x | 1.00 | = | 78.00 |
| 25.00 | x | 6.00 | x | 1.00 | = | 150.00 |

## Area Type

| Measurements | Total | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
|---|---|---|---|---|---|---|---|
| 12.00 x 4.00 x 1.00 | 48.00 | X | ☐ | ☐ | ☐ | ☐ | ☐ |
| 26.00 x 16.00 x 1.00 | 416.00 | X | ☐ | ☐ | ☐ | ☐ | ☐ |
| 20.00 x 11.00 x 1.00 | 220.00 | X | ☐ | ☐ | ☐ | ☐ | ☐ |
| 27.00 x 24.00 x 1.00 | 648.00 | X | ☐ | ☐ | ☐ | ☐ | ☐ |
| 22.00 x 20.00 x 1.00 | 440.00 | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| 21.00 x 10.00 x 1.00 | 210.00 | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| 27.00 x 8.00 x 1.00 | 216.00 | ☐ | X | ☐ | ☐ | ☐ | ☐ |
| 13.00 x 6.00 x 1.00 | 78.00 | ☐ | X | ☐ | ☐ | ☐ | ☐ |
| 25.00 x 6.00 x 1.00 | 150.00 | ☐ | X | ☐ | ☐ | ☐ | ☐ |

Produced using ACI software, 800.234.8727 www.aciweb.com    DIM 02092007

| | | |
|---|---|---|
| Borrower: Kristen Frame | File No.: 9-26 | |
| Property Address: 21500 Linnet Street NW | Case No.: Frame | |
| City: Oak Grove | State: MN | Zip: 55011 |
| Lender: Kristen Frame | | |



FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: February 4, 2009
Appraised Value: $ 265,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE

| | |
|---|---|
| Borrower: Kristen Frame | File No.: 9-26 |
| Property Address: 21500 Linnet Street NW | Case No.: Frame |
| City: Oak Grove | State: MN    Zip: 55011 |
| Lender: Kristen Frame | |



**COMPARABLE SALE #1**

3100 201st Lane NW
Oak Grove
Sale Date: 09/26/2008
Sale Price: $ 300,000



**COMPARABLE SALE #2**

19965 Quapaw Street NW
Oak Grove
Sale Date: 12/29/2008
Sale Price: $ 264,150



**COMPARABLE SALE #3**

81 204th Lane NW
Oak Grove
Sale Date: 12/31/2008
Sale Price: $ 299,000

| Borrower: Kristen Frame | | File No.: 9-26 | |
|---|---|---|---|
| Property Address: 21500 Linnet Street NW | | Case No.: Frame | |
| City: Oak Grove | State: MN | | Zip: 55011 |
| Lender: Kristen Frame | | | |



COMPARABLE SALE #4

21341 Killdeer Street NW
Oak Grove
Sale Date: Not Available
Sale Price: $ 229,900



COMPARABLE SALE #5

21640 Killdeer Street NW
Oak Grove
Sale Date: PCD 02/05/2009
Sale Price: $ 234,000



COMPARABLE SALE #6

4110 210th Lane NW
Oak Grove
Sale Date: Not Available
Sale Price: $ 295,000

| Borrower: Kristen Frame | File No.: 9-26 | |
|---|---|---|
| Property Address: 21500 Linnet Street NW | Case No.: Frame | |
| City: Oak Grove | State: MN | Zip: 55011 |
| Lender: Kristen Frame | | |



COMPARABLE SALE #7

4741 Verde Valley Road NW
Oak Grove
Sale Date: 12/31/2008
Sale Price: $ 305,000



COMPARABLE SALE #8

2131 Viking Boulevard NW
Oak Grove
Sale Date: 12/08/2008
Sale Price: $ 274,000



COMPARABLE SALE #9

3142 201st Lane NW
Oak Grove
Sale Date: 09/23/2008
Sale Price: $ 247,000



Living Room



Dining Room



Kitchen



1/2 Bathroom Main Floor



Laundry & Mud Room



Bedroom Main Floor

| Borrower: Kristen Frame | | File No.: 9-26 | |
|---|---|---|---|
| Property Address: 21500 Linnet Street NW | | Case No.: Frame | |
| City: Oak Grove | State: MN | | Zip: 55011 |
| Lender: Kristen Frame | | | |



Main Floor Bathroom



Main Floor Bathroom (Same Bathroom as the Bathroom Picture Above)



2nd Level Bathroom



| Borrower: Kristen Frame | File No.: 9-26 |
|---|---|
| Property Address: 21500 Linnet Street NW | Case No.: Frame |
| City: Oak Grove | State: MN | Zip: 55011 |
| Lender: Kristen Frame | |

1st Level

Dining Room

Living Room

Kitchen

Bedroom

1/2 Bath

Laundry & Mud Room

Foyer

Bath

3 Car Garage

Bedroom

Bedroom

Bath

2nd Level

Sketch by Apex IV Windows™

**AREA CALCULATIONS SUMMARY**

| Code | Description | Size | Totals |
|---|---|---|---|
| GLA1 | First Floor | 1332.00 | 1332.00 |
| GLA2 | Second Floor | 444.00 | 444.00 |
| GAR | Garage | 650.00 | 650.00 |
| | TOTAL LIVABLE (rounded) | | 1776 |

**LIVING AREA BREAKDOWN**

| Breakdown | | | Subtotals |
|---|---|---|---|
| First Floor | | | |
| 4.0 | x | 12.0 | 48.00 |
| 16.0 | x | 26.0 | 416.00 |
| 11.0 | x | 20.0 | 220.00 |
| 24.0 | x | 27.0 | 648.00 |
| Second Floor | | | |
| 8.0 | x | 27.0 | 216.00 |
| 6.0 | x | 13.0 | 78.00 |
| 6.0 | x | 25.0 | 150.00 |
| 7 Areas Total (rounded) | | | 1776 |

| Borrower: Kristen Frame | | File No.: 9-26 | |
|---|---|---|---|
| Property Address: 21500 Linnet Street NW | | Case No.: Frame | |
| City: Oak Grove | State: MN | | Zip: 55011 |
| Lender: Kristen Frame | | | |



Microsoft® MapPoint®

ISANTI

Subject
21500 Linnet Street NW
Oak Grove, MN 55011-4802

Comparable Sale 5
21640 Killdeer Street NW
Oak Grove, MN 55011-9198
(0.21 MILES NE)

Comparable Sale 6
4110 210th Lane NW
Oak Grove, MN 55303-8706
(2.72 MILES W)

Comparable Sale 4
21341 Killdeer Street NW
Oak Grove, MN 55011-4335
(0.19 MILES SSE)

Comparable Sale 7
4741 Verde Valley Road NW
Oak Grove, MN 55011
(3.15 MILES WSW)

Comparable Sale 3
81 204th Lane NW
Cedar, MN 55011
(2.42 MILES ESE)

Comparable Sale 1
3100 201st Lane NW
Oak Grove, MN 55011-9816
(2.14 MILES SW)

Comparable Sale 2
19965 Quawpaw Street NW
Oak Grove, MN 55011
(3.56 MILES WSW)

Comparable Sale 9
3142 201st Lane NW
Oak Grove, MN 55011-9816
(2.17 MILES SW)

Comparable Sale 8
2131 Viking Boulevard NW
Oak Grove, MN 55011-4319
(2.72 MILES S)

MINNESOTA

ANOKA

3.4 miles

©2009 Microsoft Corp ©2007 NAVTEQ and/or Tele Atlas Inc

11774 Kerry Street NW Coon Rapids, MN 555433



| | | |
|---|---|---|
| Borrower: Kristen Frame | | File No.: 9-26 |
| Property Address: 21500 Linnet Street NW | | Case No.: Frame |
| City: Oak Grove | State: MN | Zip: 55011 |
| Lender: Kristen Frame | | |



® 1999-2009 SourceProse and/or FloodSource Corporations. All rights reserved. Patents 6,631,326 and 6,678,615. Other patents pending. For Info: info@floodsource.com.

# The 100+

**Market Update for any Twin Cities Communities**

A free research tool from the Minneapolis Area Association of REALTORS®
Brought to you by the unique data-sharing traditions of the REALTOR® community



**MINNEAPOLIS AREA Association of REALTORS®**

## Oak Grove

Anoka County, MN

| | December | | | Entire Year | | |
|---|---|---|---|---|---|---|
| | 2007 | 2008 | Change | 2007 | 2008 | Change |
| New Listings | 11 | 19 | + 72.7% | 291 | 295 | + 1.4% |
| Closed Sales | 4 | 9 | + 125.0% | 68 | 82 | + 20.6% |
| Average Sales Price | $451,141 | $234,439 | - 48.0% | $292,041 | $257,831 | - 11.7% |
| Percent of Original List Price Received at Sale* | 96.3% | 96.4% | - 1.9% | 93.4% | 91.7% | - 1.8% |
| Average Days on Market Until Sale** | 159 | 243 | + 52.3% | 139 | 217 | + 56.6% |
| Single-Family Detached Inventory | 99 | 87 | - 12.1% | -- | -- | -- |
| Townhouse-Condo Inventory | 1 | 1 | - 0.0% | -- | -- | -- |

*Does not account for list prices from any previous listing contracts  **City market time figures are based on Cumulative Days on Market, which does account for previous listing contracts







Some of the figures referenced in this report are for only one month worth of activity. As such, they can sometimes look extreme due to the small sample size involved. For broader historical market information, please feel free to contact us.

© 2008 Minneapolis Area Association of REALTORS® based upon data reported to the Regional Multiple Listing Service, Inc.

********* INVOICE *********

File Number: 9-26                              2/4/2009

Kristen Frame
21500 Linnet Street NW
Oak Grove, MN 55011

Borrower :          Kristen Frame

Invoice # :         9-26
Order Date :
Reference/Case # :  Frame
PO Number :

1004 - Single Family Residential

21500 Linnet Street NW
Oak Grove, MN  55011

| | | |
|---|---|---|
| 1004 - SFR | $ | 300.00 |
| | $ | -------------- |
| Invoice Total | $ | 300.00 |
| State Sales Tax @ | $ | 0.00 |
| Deposit | ($ | 300.00 ) |
| Deposit | ($ | ) |
| | | -------------- |
| Amount Due | $ | 0.00 |

Terms:  30 Days

Please Make Check Payable To:

Hadtrath Appraisals, Inc.
11774 Kerry Street NW
Coon Rapids, MN 55433

Fed. I.D. #: 41-1946673

## STATE OF MINNESOTA



### Department of Commerce

HADTRATH, JOHN JAMES
11774 KERRY STREET NW
COON RAPIDS
COON RAPIDS, MN 55433

The Undersigned COMMISSIONER OF COMMERCE for the State of Minnesota hereby certifies that

JOHN JAMES HADTRATH

11774 KERRY STREET NW
COON RAPIDS
COON RAPIDS, MN 55433

has complied with the laws of the State of Minnesota and is hereby licensed to transact the business of

Resident Appraiser : Certified Residential

### License Number: 4003345

unless this authority is suspended, revoked, or otherwise legally terminated. This license shall be in effect until August 31, 2009.

IN TESTIMONY WHEREOF, I have hereunto set my hand this September 16, 2007.

**COMMISSIONER OF COMMERCE**

Minnesota Department of Commerce

Licensing Division

85 7th Place East, Suite 500
St. Paul, MN 55101-3165
Telephone: (651) 296-6319
Email: licensing.commerce@state.mn.us
Website: commerce.state.mn.us

**Continuing Education:**

| CE Requirement Type | CE Required Hours |
| --- | --- |
| Total - Appraiser | 30 |
| USPAP | 7 |

**Notes:**

- Continuing Education: 15 hours is required in the first renewal period, which includes a 7 hour USPAP course. 30 hours is required for each subsequent renewal period, which includes a 7 hour USPAP course.
- Appraisers: You must hold a licensed Residential, Certified Residential, or Certified General qualification in order to perform appraisals for federally-related transactions. Trainees do not qualify. For further details, please visit our website at commerce.state.mn.us.

# HADTRATH APPRAISALS, INC.

11774 Kerry Street Northwest
Coon Rapids, Minnesota 55433

**QUALIFICATIONS OF:**    **John J. Hadtrath**
Certified Residential Real Estate Appraiser
Minnesota Appraiser License # 4003345

**FORMAL EDUCATION:**    College of St. Thomas, St. Paul, Minnesota 1986 – 1987
Concordia College, St. Paul, Minnesota 1990 – 1991

**SPECIALIZED EDUCATION:**    *Through Prosource Education Services*
2000 USPAP Update, 2000
Appraisal 109; USPAP Standards and Ethics Update, 1999
Business Planning for Appraisal Professionals, 1999
How to Pass the Minnesota Appraiser Exam, 1997
Appraisal 206R: Case Studies in Residential Appraisal Problem Solving, 1996
Appraisal 204R: How to perform FHA Appraisals within HUD Guidelines, 1996
Appraisal 101: Introduction to Appraisal Principles I, 1992
Appraisal 102: Introduction to Appraisal Principles II, 1992
Appraisal 103: Introduction to Appraisal Practices I, 1992
Appraisal 104: Introduction to Appraisal Practices II, 1992
Appraisal 105: Introduction to Appraisal Standards and Ethics, 1992
Appraisal 106: Appraiser's Guide to Residential Construction, 1992
Appraisal 202: Investment Property Appraisal, 1994
Appraisal 205R: Residential Appraisal Regulatory and Legal Update, 1995
Appraisal 108: Investment and Financial Analysis, 1996

**EXPERIENCE:**    **Quality Control/ Review Appraiser, 1991**
*Forsythe Appraisals, Inc.*

**Appraiser Assistant, 1991 – 1992**
*Forsythe Appraisals, Inc.*

**Residential Real Estate Appraiser, 1992 – 1998**
*Forsythe Appraisals, Inc.*

**Residential Real Estate Appraiser, 1998 – 2000**
*Northland Appraisals, Inc.*

**CURRENTLY:**    **Residential Real Estate Appraiser, 1999 – present**
*Hadtrath Appraisals, Inc.*
• Actively, exclusively and continuously engaged in the Real Estate Appraisal
profession since 1991.
• Appraisals over this period have been for Savings and Loans, Credit Unions,
Realtors, Banks and other mortgage lending institutions.

**HADTRATH APPRAISERS, INC.**    11774 Kerry Street Northwest • Coon Rapids, Minnesota 55443
Phone: 763-323-3628 • Fax: 763-323-9183



| State of Minnesota | Department of Commerce Licensing Division |
|---|---|
| Department of Commerce | Telephone: (651) 296-6319 |
| 85 – 7th Place East | E-mail address: licensing.commerce@state.mn.us |
| St. Paul, MN 55101-3165 | Website address: commerce.state.mn.us |

### Certified Residential Real Property Appraiser License

Legal Name: **JOHN J HADTRATH**
Address:    11774 KERRY ST NW
           COON RAPIDS, MN 55433

A person licensed in this category can perform appraisals for federally-related
transactions.

License Identification Number:    AP- 4003345

A person licensed in this category may appraise residential or agricultural property
without regard to transaction value or complexity.

License Expiration Date:    8/31/2007
Continuing Education: 30 credits due by license expiration date.



**FREA**

## COVER NOTE

**INSURED:** John J. Hadtrath

**MAILING ADDRESS:** 11774 Kerry Street NW
Coon Rapids, MN 55433

*This is to certify that the undersigned has procured insurance coverage as hereafter specified from certain companies and/or underwriters.*

**EFFECTIVE:** 4/1/2008    **EXPIRATION:** 4/1/2009

**COVERAGE:** Professional Liability for Specified Professions

- Profession: Real Estate Appraiser
- Claims Made Form: MPL#26901 (9/87)
- Retroactive Date: 4/1/2001
- Limits:  Per Occurrence: $500,000    Annual Aggregate: $500,000
- Deductible: $1,000

**CONDITIONS:**

- Real Estate Agent/ Broker Referral Indemnity
- Knowledge of Wrongful Act Exclusion
- Pending and/or Prior Litigation Exclusion
- Defense within Policy Limit
- Deductible includes Loss Adjustment Expenses

**COMPANIES PARTICIPATING:**

National Union Fire Insurance Company of Pittsburgh, PA

**ASSIGNED COVER NOTE #: Z FRE A 01-0162**
Issued at:  4907 Morena Blvd., Suite 1415
San Diego, CA 92117

**DATE:** March 7, 2008       **BY:**

*Insurance, when effected shall be subject to all terms and conditions of policy (ies) which will be issued, and in the event of any inconsistency herewith, the terms and provisions of the policy prevail.*

11774 Kerry Street NW Coon Rapids, MN 555433

| Borrower: Kristen Frame | File No.: 9-26 |
|---|---|
| Property Address: 21500 Linnet Street NW | Case No.: Frame |
| City: Oak Grove State: MN | Zip: 55011 |
| Lender: Kristen Frame | |



2nd Level Bedroom



2nd Level Bedroom



Basement Den

| | |
|---|---|
| Borrower: Kristen Frame | File No.: 9-26 |
| Property Address: 21500 Linnet Street NW | Case No.: Frame |
| City: Oak Grove | State: MN     Zip: 55011 |
| Lender: Kristen Frame | |



Basement Family Room



Basement Rec & Family Room



Basement Rec Room



Basement Bathroom



Basement Bedroom





Welcome to the Web site of
# Anoka County
Minnesota

## Property Details

Documents

| Property ID | 10-33-24-43-0012 | Situs Address | 21500 LINNET ST NW , OAK GROVE, MN 55011-0000 |

You may select a document row and then press the Details or the View Image buttons:

[ Details ]  [ View Image ]

To search Historical Index documents for this parcel press the following button:

[ Search Historical Index ]

### Certificates and Recorded Documents

| Select | Recorder Method | Type | Document No./Certificate No. | Recorded Date | Document Date | Ref.Docs. |
|---|---|---|---|---|---|---|
| ○ | Abstract | PATT POWER OF ATTORNEY | 2004830.018 | 01/09/2009 | 04/10/2007 | N |
| ○ | Abstract | PATT POWER OF ATTORNEY | 2004830.017 | 01/09/2009 | 12/18/2008 | Y |
| ◉ | Abstract | ASMO ASSIGNMENT OF MORTGAGE | 2004830.016 | 01/09/2009 | 12/12/2008 | Y |
| ○ | Abstract | WDEE WARRANTY DEED | 1991855.014 | 03/22/2007 | 01/19/2007 | N |
| ○ | Abstract | MTGE MORTGAGE | 1991707.002 | 03/15/2007 | 01/19/2007 | N |
| ○ | Abstract | MTGE MORTGAGE | 1991707.001 | 03/15/2007 | 01/19/2007 | N |
| ○ | Abstract | SMTG SATISFACTION OF MORTGAGE | 1991536.007 | 03/08/2007 | 03/01/2007 | Y |
| ○ | Abstract | RMTG RELEASE OF MORTGAGE | 1991440.018 | 03/05/2007 | 02/26/2007 | Y |
| ○ | Abstract | MTGE MORTGAGE | 1984985.014 | 06/05/2006 | 05/17/2006 | N |
| ○ | Abstract | MTGE MORTGAGE | 1984985.013 | 06/05/2006 | 05/17/2006 | N |
| ○ | Abstract | WDEE WARRANTY DEED | 1984985.012 | 06/05/2006 | 05/16/2006 | N |
| ○ | Abstract | RMTG RELEASE OF MORTGAGE | 1979981.005 | 11/23/2005 | 09/14/2005 | Y |
| ○ | Abstract | WDEE WARRANTY DEED | 1974836.001 | 05/02/2005 | 04/28/2005 | N |
| ○ | Abstract | SFCL SHERIFFS CERTIFICATE & FORECLOSURE/SALE | 1966102.0 | 10/21/2004 | 10/21/2004 | Y |
| ○ | Abstract | PATT POWER OF ATTORNEY | 1949436.0 | 08/17/2004 | 08/12/2004 | Y |
| ○ | Abstract | MTGE MORTGAGE | 1868536.0 | 10/30/2003 | 08/01/2003 | N |
| ○ | Abstract | AFAT AFFIDAVIT OF NON REVOCATION/AFFIDAVIT OF ATTY | 1868535.0 | 10/30/2003 | 08/01/2003 | Y |
| ○ | Abstract | PATT POWER OF ATTORNEY | 1868534.0 | 10/30/2003 | 07/30/2003 | N |
| ○ | Abstract | SMTG SATISFACTION OF MORTGAGE | 1857652.0 | 10/02/2003 | 09/22/2003 | N |
| ○ | Abstract | MTGE MORTGAGE | 1758784.0 | 01/30/2003 | 11/13/2002 | N |
| ○ | Abstract | WDEE WARRANTY DEED | 1758783.0 | 01/30/2003 | 11/13/2002 | N |
| ○ | Abstract | SMTG SATISFACTION OF | 1747333.0 | 01/02/2003 | 11/04/2002 | Y |

EXHIBIT B-1

| | | MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| ○ | Abstract | SVCC SURVEYORS CERTIFICATE OF CORRECTION | 1732794.0 | 11/20/2002 | 10/03/2002 | Y |
| ○ | Abstract | MTGE MORTGAGE | 1675590.0 | 05/15/2002 | 04/30/2002 | N |
| ○ | Abstract | WDEE WARRANTY DEED | 1675589.0 | 05/15/2002 | 04/30/2002 | N |
| ○ | Abstract | QDEE QUIT CLAIM DEED | 1580094.0 | 06/21/2001 | 06/19/2001 | N |
| ○ | Abstract | AGRM AGREEMENT | 1571055.0 | 05/18/2001 | 04/16/2001 | N |
| ○ | Abstract | PLAT | 1571052.0 | 05/18/2001 | 05/11/2001 | N |

Developed by ASIX, Incorporated.

@2006 All rights reserved.

Version 1.0.3145.23369

EXHIBIT B-2

**FORM B10** (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF MINNESOTA | PROOF OF CLAIM |
|---|---|

| Name of Debtor  Kristen Nicole Frame | Case Number   09-41010 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

MERS as nominee for First Franklin Financial Corp., as serviced by Home Loan Services, Inc.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
150 Allegheny Center Mall
Pittsburgh PA, 15212
Attn: Cashiering ➕
Telephone number:

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

XXXXXX7453

Check here
if this claim   ☐ replaces
☒ amends    a previously filed claim, dated: 3/23/09

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  - Last four digits of SS #: _____
- ☐ Unpaid compensation for services performed
  - from _____ to _____
  - (date)          (date)

**2. Date debt was incurred:**   January 19, 2007

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed: $**_____  291356.62 _____  291356.62
  (unsecured)       (secured)       (priority)       (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☒ Real Estate  ☐ Motor Vehicle
- ☐ Other _____
Value of Collateral: $ 291356.62

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 14565.85
post-petition pre-confirmation attorneys fees included per §506(b)

**6. Unsecured Nonpriority Claim $**_____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. 1., 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your proof of claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Send original to:
**U.S. Bankruptcy Court**
**301 U.S. Courthouse**
**300 South Fourth Street**
**Minneapolis, MN 55415**

For payment send copy to:
**Chapter 13 Trustee (see notice of commencement of case for name & address of chapter 13 trustee)**

| Date  5/4/09 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):  /E/ Paul A. Weingarden   Brian H. Liebo |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*
**For CHAPTER 13 CASES filed on or after April 20, 2005**

EXHIBIT C-1

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

EXHIBIT "A"

ITEMIZATION OF TOTAL DEBT AND ARREARAGES AS OF THE TIME OF FILING

| | | | |
|---|---|---|---|
| Loan #: | XXXXXX7453 | Debtor(s) Name(s): | *Kristen Nicole Frame* |
| Case #: | 09-41010 | Date Prepared: | *5/4/2009* |
| Date Filed: | 2/24/2009 | | |

| | | |
|---|---|---|
| Total Debt as of: | | 2/24/2009 |
| Principal Balance: | $ | 276,000.00 |
| Interest from Last Paid Installment: | $ | 12,294.27 |
| Payment Late Charges: | $ | 786.60 |
| Accrued Late Charges: | | |
| Non-Escrow Advances: | | |
| Escrow Advances: | | |
| Escrow Balance: (*Subtracted) | | |
| Other Unpaid Fees: | $ | 2,275.75 |
| Suspense Balance (*Subtracted): | | |
| TOTAL DEBT: | $ | 291,356.62 |

| Breakdown of "Other Unpaid Fees" | | |
|---|---|---|
| Pre-Petition Legal Fees: | $ | - |
| Pre-Petition Legal Costs: | $ | - |
| Property Inspections: | $ | 18.00 |
| BPO/Appraisal: | $ | - |
| Lender Foreclosure Costs: | $ | 2,007.75 |
| NSF Fees: | $ | - |
| Post-Petition Legal Fee: | $ | 250.00 |

| | | |
|---|---|---|
| Total Arrearages as of: | | 2/24/2009 |
| Payments: | $ | 10,488.00 |
| Payment Late Charges: | $ | 786.60 |
| Accrued Late Charges: | | |
| Escrow Shortage: | $ | 1,015.50 |
| Pre-Petition Legal Fees: | $ | - |
| Pre-Petition Legal Costs: | $ | - |
| Property Inspections: | $ | 18.00 |
| Lender Foreclosure Costs: | $ | 2,007.75 |
| NSF Fees: | $ | - |
| BPO/Appraisal: | $ | - |
| Post-Petition Legal Fees (per §506b) | $ | 250.00 |
| Suspense Balance (*Subtracted): | $ | - |
| TOTAL ARREARAGE: | $ | 14,565.85 |

| Breakdown of Payments Due | | | |
|---|---|---|---|
| | amount | start | end |
| $ | 1,748.00 | 9/1/2008 | 2/1/2009 |
| $ | - | | |
| $ | - | | |
| $ | - | | |

| # | | Amount | | Total | |
|---|---|---|---|---|---|
| 6 | $ | 1,748.00 | $ | 10,488.00 | |
| 0 | $ | - | $ | - | |
| 0 | $ | - | $ | - | |
| 0 | $ | - | $ | - | |
| 0 | $ | - | $ | - | |

| | | |
|---|---|---|
| Payment Amount for: | | |
| | $ | - |

EXHIBIT C-2

Record ID 1797356

# 1991707.001

———————————— [Space Above This Line For Recording Data] ————————————

## 1st MORTGAGE

**MIN:** 100425240012050180

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated            January 19, 2007            , together with all Riders to this document.

**(B) "Borrower"** is KRISTEN N FRAME, A SINGLE WOMAN

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
Lender is a Corporation                                             organized and existing under the laws of Delaware                                             . Lender's address is
2150 NORTH FIRST STREET, SAN JOSE, California 95131

**(E) "Note"** means the promissory note signed by Borrower and dated            January 19, 2007            . The Note states that Borrower owes Lender            Two Hundred Seventy Six Thousand and no/100
Dollars (U.S. $ 276,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than            February 01, 2037            .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

MINNESOTA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3024 1/01
                                                                                        4001205018 GreatDocs™
ITEM 2713L1 (0011)—MERS MFMN3115            *(Page 1 of 12 pages)*            To Order Call: 1-800-968-5775

RETURN TO:
Epic Support Services
1801 E. American Blvd. Ste # 15
Bloomington, MN 55425

Mortgage 1/22/2007



E-07-00612-00022

EXHIBIT C-3

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] Other(s) [specify] Prepay Rider |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MINNESOTA—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 2713L2 (0011)—MERS MFMN3115          *(Page 2 of 12 pages)*

Form 3024 1/01
4001205018  GreatDocs ™
To Order Call: 1-800-968-5775

EXHIBIT C-4

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the         COUNTY          of          ANOKA          :
                        [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of                    21500 LINNET ST. NW
                                                            [Street]

OAK GROVE              , Minnesota      55011      ("Property Address"):
   [City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or

MINNESOTA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3024 1/01

ITEM 2713L3 (0011)—MERS MFMN3115              (Page 3 of 12 pages)          4001205018  GreatDocs™
                                                                            To Order Call: 1-800-968-5775

EXHIBIT C-5

Fidelity National Title Insurance Company

Commitment Number:  T-06-861725

## SCHEDULE C
## PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

LOT 2, BLOCK 3, NIGHTINGALE KNOLL, ANOKA COUNTY, MINNESOTA.

ABSTRACT PROPERTY.

THE ABOVE PROPERTY IS SITUATED IN ANOKA COUNTY, STATE OF MINNESOTA.

PID # 10 33 24 43 0012

ADDRESS:
21500 LINNETT ST NW
OAK GROVE, MN  55011

Prepared For:
1ST LENDING GROUP  -  SHAWN

ALTA Commitment
Schedule C

(T-06-861725.PFD/T-06-861725/48)

EXHIBIT C-6

# PREPAYMENT RIDER

This Prepayment Rider is made this     19th     day of     January  2007     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to

FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

21500 LINNET ST. NW
OAK GROVE, MN  55011

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Except as provided below, Borrower may make a full prepayment or partial prepayment of principal at any time without paying any charge. However, if within the first     36     months after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge not to exceed the lesser or 2% of the unpaid principal balance or 60 days interest on the unpaid principal balance.

The prepayment fee will not apply if the subject property is sold.

### NOTICE TO BORROWER

**Do not sign this Prepayment Rider before you read it. This Prepayment Rider provides for the payment of a charge if you wish to repay the loan prior to the date provided for repayment in the agreement**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)          _____ (Seal)
KRISTEN N. FRAME          -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                -Borrower


Fixed Rate and Balloon Prepayment Rider - First and Second Liens – Minnesota
Adjustable Rate Prepayment Rider – First Liens – Minnesota

MFMN5029
FF003810                                                          4001205018

EXHIBIT C-7

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this        19th        day of        January 2007        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

21500 LINNET ST. NW
OAK GROVE, MN 55011
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of        7.6000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A)  Change Dates
The interest rate I will pay may change on the first day of        February 2009        , and on that day every        6th        month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding Five and Four Tenths
percentage points (        5.4000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL) -- Single Family

ITEM 54074L1 (C5751L) (9910)    MFCD6053        *(Page 1 of 3 pages)*        4001205018        GREATLAND ■
To Order Call: 1-800-530-9393 ☐Fax 616-791-1131

EXHIBIT C-8

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     10.6000 % or less than     7.6000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One

percentage point(s) (     1.0000 %) from the rate of interest I have been paying for the preceding     6     months; subject to the following limits: My interest rate will never be greater than     13.6000 %, nor less than     7.6000 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

EXHIBIT C-9

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____(Seal)   _____(Seal)
KRISTEN N. FRAME                    -Borrower                                   -Borrower

_____(Seal)   _____(Seal)
                                    -Borrower                                   -Borrower

_____(Seal)   _____(Seal)
                                    -Borrower                                   -Borrower

*[Sign Original Only]*

MFCD6053
540 7413                            *(Page 3 of 3 pages)*                        4001205018

EXHIBIT C-10

ANOKA COUNTY MINNESOTA

Document No.:  1991707.001 ABSTRACT

I hereby certify that the within instrument was filed in this
office for record on: 03/15/2007 2:50:00 PM

Fees/Taxes In the Amount of:  $685.80

MAUREEN J. DEVINE

Anoka County Property Tax
Administrator/Recorder/Registrar of Titles

CGT, Deputy


        Record ID:   1797356

EXHIBIT C-11

FORM B10 (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF MINNESOTA | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Kristen Nicole Frame | Case Number: 09-41010 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

MERS, as Nominee for First Franklin Financial Corp.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
150 Allegheny Center Mall
Pittsburgh PA, 15212
Attn: Cashiering
Telephone number:

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

XXXXXX7454

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: _____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
- ☐ Unpaid compensation for services performed
  from _____ to _____
  (date)        (date)

**2. Date debt was incurred:** January 19, 2007

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed: $**_____  $77,357.41 _____  $77,357.41
(unsecured)        (secured)        (priority)        (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☒ Real Estate   ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $77,357.41

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ **4384.96**_____
post-petition pre-confirmation attorneys fees included per §506(b)

**6. Unsecured Nonpriority Claim $**_____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. 1., 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.
**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Send original to:
**U.S. Bankruptcy Court**
**301 U.S. Courthouse**
**300 South Fourth Street**
**Minneapolis, MN 55415**

For payment send copy to:
**Chapter 13 Trustee (see notice of commencement of case for name & address of chapter 13 trustee)**

| Date 3/23/09 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): /E/ Paul A. Weingarden Brian H. Liebo |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*
**For CHAPTER 13 CASES filed on or after April 20, 2005**

EXHIBIT D-1

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

EXHIBIT "A"

ITEMIZATION OF TOTAL DEBT AND ARREARAGES AS OF THE TIME OF FILING

| Loan #: | XXXXXX7454 | Debtor(s) Name(s): | *Kristin Nicole Frame* |
|---|---|---|---|
| Case #: | 09-41010 | Date Prepared: | *3/23/2009* |
| Date Filed: | 3/23/2009 | | |

| Total Debt as of: | | 3/23/2009 | | Breakdown of "Other Unpaid Fees" | | |
|---|---|---|---|---|---|---|
| Principal Balance: | $ | 72,608.87 | | Pre-Petition Legal Fees: | $ | - |
| Interest from Last Paid Installment: | $ | 4,012.06 | | Pre-Petition Legal Costs: | $ | - |
| Payment Late Charges: | $ | - | | Property Inspections: | | |
| Accrued Late Charges: | $ | 486.48 | | BPO/Appraisal: | $ | - |
| Non-Escrow Advances: | $ | - | | Lender Foreclosure Costs: | $ | - |
| Escrow Advances: | $ | - | | NSF Fees: | $ | - |
| Other Unpaid Fees: | $ | 250.00 | | Post-Petition Legal Fee: | $ | 250.00 |
| Suspense Balance (*Subtracted): | $ | - | | Taxes | $ | - |
| TOTAL DEBT: | $ | 77,357.41 | | | | |

| Total Arrearages as of: | | 3/23/2009 |
|---|---|---|
| Payments: | $ | 3,648.48 |
| Payment Late Charges: | $ | 486.48 |
| Additional Late Charges: | $ | - |
| Escrow Shortage: | | |
| Pre-Petition Legal Fees: | $ | - |
| Pre-Petition Legal Costs: | $ | - |
| Property Inspections: | $ | - |
| Lender Foreclosure Costs: | $ | - |
| NSF Fees: | $ | - |
| BPO/Appraisal: | $ | - |
| Post-Petition Legal Fees (per §506b) | $ | 250.00 |
| Suspense Balance (*Subtracted): | $ | - |
| TOTAL ARREARAGE: | $ | 4,384.96 |

| Breakdown of Payments Due | | | |
|---|---|---|---|
| amount | | start | end |
| $ | 608.08 | 9/1/2008 | 2/1/2009 |
| $ | - | | |
| $ | - | | |
| $ | - | | |

| # | | Amount | | Total |
|---|---|---|---|---|
| 6 | $ | 608.08 | $ | 3,648.48 |
| 0 | $ | - | $ | - |
| 0 | $ | - | $ | - |
| 0 | $ | - | $ | - |
| 0 | $ | - | $ | - |

| Payment Amount for: | |
|---|---|
| | $ - |

Record ID 1797365

# 1991707.002

──────── [Space Above This Line For Recording Data] ────────

## 2nd MORTGAGE
### (Secondary Lien)

MIN: 100425240012050230

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated         January 19, 2007         , together with all Riders to this document.

**(B) "Borrower"** is KRISTEN N FRAME, A SINGLE WOMAN

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
Lender is a Corporation                                                    organized and existing under
the laws of Delaware                                                       . Lender's address is
2150 NORTH FIRST STREET, SAN JOSE, California 95131

**(E) "Note"** means the promissory note signed by Borrower and dated         January 19, 2007         . The Note states that Borrower owes Lender         Sixty Nine Thousand and no/100
Dollars (U.S. $69,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than         February 01, 2017         .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, if allowed under Applicable Law, and all sums due under this Security Instrument, plus interest.

MINNESOTA MORTGAGE—Single Family—**Secondary Lien**
THE COMPLIANCE SOURCE, INC. ©
ITEM 8615L1 (0304)—**MERS** MFMN3119         *(Page 1 of 11 pages)*

4001205023                                    GREATLAND ■
To Order Call: 1-800-530-9393□Fax: 616-791-1131

**RETURN TO:**
Epic Support Services
1801 E. American Blvd. Ste # 15
Bloomington, MN 55425

Mortgage 1/22/2007



E-07-00613-00022

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Home Improvement Rider | ☐ Revocable Trust Rider | |
| ☒ Other(s) [specify] Prepay Rider | | |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MINNESOTA MORTGAGE—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM 8615L2 (0304)—**MERS** MFMN3119          *(Page 2 of 11 pages)*

4001205023                    GREATLAND ■
To Order Call: 1-800-530-9393☐Fax: 616-791-1131

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the                    **COUNTY**                    of                    **ANOKA**                    :
             [Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of                              21500 LINNET ST. NW
                                                                      [Street]

OAK GROVE                        , Minnesota              55011              ("Property Address"):
   [City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1.    Payment of Principal, Interest and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and if allowable under Applicable Law, any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   **2.    Application of Payments or Proceeds.** Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law. Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall

**MINNESOTA MORTGAGE**—Single Family—**Secondary Lien**
THE COMPLIANCE SOURCE, INC. ©
ITEM 8615L3 (0304)—**MERS** MFMN3119          *(Page 3 of 11 pages)*          4001205023                    GREATLAND ■
                                                                      To Order Call: 1-800-530-9393□Fax: 616-791-1131

State of Minnesota,                                    County ss: _Ramsey_

The instrument was acknowledged before me on    1-19-07
by KRISTEN N. FRAME    _1 A Single Woman_

Benjamin Bryan Aurich
NOTARY PUBLIC · MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2007

_____
                                                          Notary Public

My commission expires:


This instrument was drafted by

Name: MATT HILMOE

Address: FIRST FRANKLIN FINANCIAL CORP.
         4300 MARKET POINTE DRIVE #200,
         BLOOMINGTON, MN 55435


After Recording Return To: FIRST FRANKLIN
                    c/o SECURITY CONNECTIONS
                    1935 INTERNATIONAL WAY
                    IDAHO FALLS, ID  83402


MINNESOTA MORTGAGE—Single Family—Secondary Lien
THE COMPLIANCE SOURCE, INC. ©
ITEM 8615L11 (0304)—MERS MFMN3119        _(Page 11 of 11 pages)_

4001205023                                    GREATLAND ■
To Order Call: 1-800-530-9393□Fax: 616-791-1131

Fidelity National Title Insurance Company

Commitment Number:  T-07-862142

**SCHEDULE C**

**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

LOT 2, BLOCK 3, NIGHTINGALE KNOLL, ANOKA COUNTY, MINNESOTA.

ABSTRACT PROPERTY.

THE ABOVE PROPERTY IS SITUATED IN ANOKA COUNTY, STATE OF MINNESOTA.

PID # 10 33 24 43 0012

ADDRESS:
21500 LINNETT ST NW
OAK GROVE, MN  55011

Prepared For:
1ST LENDING GROUP  -  SHAWN

ALTA Commitment
Schedule C

(T-07-862142.PFD/T-07-862142/20)

# PREPAYMENT RIDER

This Prepayment Rider is made this        19th       day of        January 2007        ,and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to

FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

21500 LINNET ST. NW
OAK GROVE, MN 55011

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Except as provided below, Borrower may make a full prepayment or partial prepayment of principal at any time without paying any charge. However, if within the first        24       months after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge not to exceed the lesser or 2% of the unpaid principal balance or 60 days interest on the unpaid principal balance.

The prepayment fee will not apply if the subject property is sold.

### NOTICE TO BORROWER

**Do not sign this Prepayment Rider before you read it. This Prepayment Rider provides for the payment of a charge if you wish to repay the loan prior to the date provided for repayment in the agreement**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)          _____ (Seal)
KRISTEN N. FRAME                 -Borrower                                           -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower


**Fixed Rate and Balloon Prepayment Rider - First and Second Liens – Minnesota**
**Adjustable Rate Prepayment Rider – First Liens – Minnesota**

MFMN5029
FF003810                                                                          4001205023

---

**BALLOON RIDER TO MORTGAGE, DEED OF TRUST OR SECURITY DEED**
FIRST FRANKLIN FINANCIAL CORP.,

---

Date January 19, 2007

1. BORROWER(S): KRISTEN N. FRAME

Property Address: 21500 LINNET ST. NW
OAK GROVE, MN 55011

2. **DEFINED TERMS; RIDER A PART OF THE SECURITY INSTRUMENT.** "Rider" means this Balloon Rider to Mortgage, Deed of Trust or Security Deed which is attached to, made a part of and amends and supplements the Mortgage, Deed of Trust or Security Deed ("Security Instrument") which Borrower(s) gave to FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB ("the Lender") and which is dated the same date as this Rider. The Security Instrument secures the Note and Security Agreement ("Note") and covers the property described there in located at the address set forth above. The term "the Lender" includes Lender's successors and assigns. In the event there are any conflicts between this Rider and the Security Instrument or the Note, the provisions of the Rider will control.

3. **BALLOON NOTE.** The final payment due under the Note is larger than the previous monthly payments. The final payment includes a substantial payment of principal. The Note is commonly called a "balloon note."

4. **BALLOON NOTE AGREEMENT.** Borrower(s) understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE SECURITY INSTRUMENT. THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE.

5. **SIGNATURES.** BORROWER HAS READ AND AGREES TO ALL PROVISIONS OF THIS RIDER.

MFCD6049
FF0139L1

4001205023

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Balloon Rider.

KRISTEN N. FRAME
Type or print name

X_____
Signature

_____
Type or print name

X_____
Signature

_____
Type or print name

X_____
Signature

_____
Type or print name

X_____
Signature

_____
Type or print name

X_____
Signature

_____
Type or print name

X_____
Signature

MFCD6049
FF0139L2

4001205023

ANOKA COUNTY MINNESOTA

Document No.:  1991707.002 ABSTRACT

I hereby certify that the within instrument was filed in this office for record on: 03/15/2007 2:50:00 PM

Fees/Taxes In the Amount of:   $209.70

MAUREEN J. DEVINE

Anoka County Property Tax

Administrator/Recorder/Registrar of Titles

CGT, Deputy


Record ID:   1797365

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF MINNESOTA

_____

In re:

Kristen Nicole Frame,                                    Bky. Case No. 09-41010

                                                         Chapter 13 Case

                        Debtor(s).
_____

# UNSWORN CERTIFICATE OF SERVICE
_____

I, Amy L. Jackson, declare under penalty of perjury that on June 2, 2009, I served the

Motion of Debtor, Memorandum of Law, and proposed Order, by Certified, Return Receipt

Requested, US Mail to the following:


MERS
150 Allegheny Center Mall
Pittsburgh, PA 15212

And

Mr. Paul A. Weingarden
Usset, Weingarden & Liebo PLLP
4500 Park Glen Road
Minneapolis, MN 55416


Executed on: June 2, 2009              Signed:  ___/e/ Amy L. Jackson
                                                Amy L. Jackson

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF MINNESOTA

_____

In re:

Kristen Nicole Frame,                               Bky. Case No. 09-41010

                                                    Chapter 13 Case

                        Debtor(s).

_____

# ORDER
_____

This case is before the court on the Debtor's motion. The Court having found that proper notice was served, and there being no response.

Based on the application and the file:

**IT IS HEREBY ORDERED AND ADJUDGED:**

1.      That the value of the homestead legally described as: Lot 2, Block 3, Nightingale Knoll, Anoka County, Minnesota, was $265,000 on February 24, 2009. The first mortgage balance thereon exceeds said value.

2.      That the lien of MERS on the Debtor's homestead legally described as: Lot 2, Block 3, Nightingale Knoll, Anoka County, Minnesota, and recorded with the Anoka County Recorder as Document No. 1991707.002 is null and void and of no legal effect.

3.      That Claim No. 4 which was filed by MERS in the amount of $77,357.41 shall be deemed and considered a general unsecured claim, to share pro rata with other general unsecured creditors pursuant to the Debtor's chapter 13 plan.

Dated:_____          _____
                                     Nancy C. Dreher
                                     United States Bankruptcy Judge